UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

KAREN ANN SCOTT,                                    Case No. 2:23-cv-00018

            Plaintiff,                              Hon. Jane M. Beckering
                                                    U.S. District Judge
    v.

COMMISSIONER OF
SOCIAL SECURITY,

            Defendant.
_____/

## REPORT AND RECOMMENDATION

### I.    Introduction

On September 20, 2020, Plaintiff Karen Ann Scott applied for disability insurance benefits (DIB), asserting a disability onset date of January 27, 2020. (ECF No. 3-3, PageID.85.)  Scott has a number of severe impairments, including degenerative changes to her spine, right shoulder and left elbow, which cause her pain and mobility issues. (ECF No. 3-2, PageID.28-29.)  Initially, the Social Security Administration denied Scott's application for DIB, and Scott requested a hearing before an Administrative Law Judge (ALJ).  ALJ Randalph E. Schum conducted this hearing on January 12, 2022. (ECF No. 3-2, PageID.62-73.)  Then, on February 1, 2022, ALJ Schum issued a decision ruling that Scott was not under a disability from the alleged onset date through the date of decision. (*Id.*, PageID.26-37.)

Scott now appeals ALJ Schum's decision. (ECF No. 1, PageID.1.) Scott argues (1) that the ALJ erred in his assessment of her pain symptoms, (2) that the ALJ erred

in formulating her residual functional capacity (RFC), and (3) that the ALJ erred by failing to properly evaluate Dr. Patel's medical opinions.

It is respectfully recommended that the Court affirm the ALJ's disability determination, which was based upon the medical and disability records, and hearing testimony.  A review of the record reveals that substantial evidence supports the ALJ's assessment of Scott's pain symptoms and his formulation of her RFC.  The record also shows that the ALJ's evaluation of Dr. Patel's medical opinions is supported by substantial evidence.  Accordingly, the undersigned recommends that the Court conclude that the decision of the ALJ is supported by substantial evidence.

## II.    ALJ's Decision

ALJ Schum's 12-page decision is the focus of this appeal.  (ECF No. 3-2, PageID.26-37.)  Generally, an ALJ must employ a five-step sequential analysis to determine whether the claimant is disabled as defined by the Social Security Act.  *See* 20 C.F.R. § 404.1520; *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004).  ALJ Schum correctly outlined this five-step process in his decision.  (ECF No. 3-2, PageID.27-28.)

Before stating his findings at each step, the ALJ found that Scott met the insured status requirements of the Social Security Act through December 31, 2025.  (*Id.*, PageID.28.)

At step one, the ALJ found that Scott had not engaged in substantial gainful activity since January 27, 2020, which was the alleged disability onset date.  (*Id.*)

2

At step two, the ALJ found that Scott had the following severe impairments: degenerative changes in her cervical spine, lumbago with radiculopathy; degenerative changes in her right shoulder and left elbow; plantar fasciitis of the right foot; history of bilateral cubital and carpel tunnel syndrome, worse on the right; and obesity.  (*Id.*, PageID.28-29.)

At step three, the ALJ found that Scott did not have an impairment or combination of impairments that met or medically equaled an impairment listed in 20 C.F.R., Part 404, Subpart P, App'x 1.  (*Id.*)  The ALJ noted that he had considered and rejected listings 1.15 (disorders of the skeletal spine resulting in compromise of a nerve root) and 1.18 (abnormality of a major joint in any extremity).  Further, the ALJ noted that there was no listing for obesity but determined that Scott could not meet any other listing in combination with obesity.  (*Id.*, PageID.30.)

Before going on to step four, the ALJ made findings regarding Scott's RFC. The ALJ stated the following:

> After careful consideration of the entire record, the undersigned found that the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b)[1] except she could never climb

---

[1]    Light work is defined as follows:

Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

ropes, ladders, or scaffolds; could occasionally climb ramps/stairs, balance, stoop, kneel, crouch, and crawl. She could occasionally reach overhead bilaterally. She could frequently handle and finger bilaterally. She should avoid concentrated exposure to temperature extremes, vibration, fumes, odors, dust, and gases, unprotected heights, and moving, dangerous machinery.

(*Id.*, PageID.30.)

In determining Scott's RFC, the ALJ considered Scott's description of her symptoms. The ALJ noted that he was utilizing a two-step process to evaluate these symptoms. First, he considered whether Scott's impairments could reasonably be expected to produce her pain and other symptoms. Second, he considered the intensity, persistence, and limiting effects of these symptoms to determine the extent to which they limit Scott's functional limitations. (*Id.*, PageID.31.)

The ALJ then summarized Scott's hearing testimony. (*Id.*)

The claimant testified that she stopped working due to pain. She alleged that she could not continue sitting at desk. She alleged pain in her neck from a herniated disc. The pain radiated down her shoulder into her arms and hands. The claimant alleged numbness and tingling in her right hand. She said her right hand was stiff with difficulty holding things. The claimant testified that she had limited range of motion of her neck. She alleged a tear in her right shoulder which was painful. The claimant alleged constant lower back pain with difficulty bending over, sitting, standing, and walking. The pain radiated down her leg into her toes.

(*Id.*)

The ALJ concluded that Scott's medically determinable impairments could reasonably be expected to cause her alleged symptoms. But the ALJ found that

---

20 C.F.R. § 404.1567(b).

4

Scott's statements regarding the intensity, persistence, and limiting effects of these symptoms were not entirely consistent with the medical evidence and other evidence in the record.  (*Id*.)  The ALJ found that Scott's description of her symptoms was inconsistent with the record.

The ALJ's then provided a detailed review of the medical records regarding Scott's complaints of neck and back pain.  (*Id*., PageID.31-32.)  The ALJ looked at Scott's April 2018, cervical spine MRI, which showed anterior disc subluxation at C-2 and C-3, and mild discogenic disease with generalized annular disc bulging.  (*Id*., PageID.31)  The ALJ noted that Scott had an unremarkable neck exam in January 2019.  (*Id*.)  Scott's September 2019 MRI showed posterior disc herniations at C4-5 and C5-6, a right paracentral herniation indenting the thecal sac, and no disc disease or herniation at C3-4, C6-7, and C7-T1.   (*Id*.)

In June 2020, Scott received an MRI after complaining that pain was radiating from her lower back down her legs.  (*Id*.)  The MRI showed disc bulges, nerve root impingement, spinal stenosis, and neural foraminal stenosis.  (*Id*., PageID.31-32.)  Her lumbar MRI showed minimal retrolisthesis with disc bulging, and no significant spinal stenosis or neural foraminal narrowing.  (*Id*., PageID.32.)  In July 2020, Scott underwent sensory nerve conduction studies that showed mildly reduced amplitudes on the right compared to the left nerves.  (*Id*.)

In October and in November 2020, Scott was examined with complaints of neck and back pain, but the findings were normal.  (*Id*.)  In April and June 2021, Scott was seen with cervical and lumbar spondylosis.  (*Id*.)  Her condition was being managed

5

by medication.  (*Id*.)   Examination of her neck was unremarkable, and she showed normal gait and arm strength.  (*Id*.)   She showed a moderate decrease in flexion and extension of her lumbar spine.  (*Id*.)   In December 2021, Scott had a normal gait on examination.  (*Id*.)  The ALJ noted that these findings failed to show that Scott had greater limitations based upon her neck and back condition than those reflected in her RFC.

In addition, the ALJ summarized information in the medical records regarding Scott's obesity.  (*Id*. PageID.32-33.)  He concluded that the limitations in the RFC accommodated Scott's obesity.  (*Id*.)

Next, the ALJ looked at Scott's osteoarthritis and tendon issues in her right shoulder.  (*Id*., PageID.33.)  The ALJ considered the findings in Scott's October 2020 MRI and April 2021 examination, and gave Scott lifting and carrying limitations with light work, and occasional overhead reaching.  (*Id*.)

The ALJ then reviewed the medical records with respect to Scott's shoulder, elbow, and hand problems.  The ALJ noted that Scott had a left elbow ulnar nerve decompression procedure in February 2021.  (*Id*.)  During her October 2021 follow-up examination, she had normal sensation, no signs of numbness, and full elbow flexion. (*Id*.)   There was mild tenderness over the ulnar nerve and her MRI showed a low-grade partial tear in her common flexor tendon but was otherwise unremarkable. (*Id*.)  Scott had a history of joint pain and weakness in both hands consistent with osteoarthritis.  (*Id*.)  Scott underwent carpal tunnel release procedures in December 2020 and February 2021.  (*Id*., PageID.33-34.)

6

The ALJ accounted for Scott's hand issues by limiting lifting and carrying with light work with only frequent handling and fingering.  (*Id*.)  Before moving on to the medical opinions in the case, the ALJ again assessed the claimant's subjective descriptions of her symptoms, concluding that her description was not consistent with her alleged functional limitations.  (*Id*., PageID.34.)

The ALJ then considered the medical opinions of state agency physician Dr. F. Kalmar, M.D.; state agency physician G. Spinka, M.D.; and Scott's treating physician, Dr. Yogesh Patel, M.D.  (*Id*., PageID.34-35.)

Dr. Kalmar provided an opinion at the initial level of review while Dr. Spinka became involved in reconsideration.  (*Id*., PageID.34.)

 Dr. Kalmar provided an extended opinion, dated November 30, 2020, regarding Scott's RFC that included exertional, postural, manipulative, and environmental limitations.  (ECF No. 3-3, PageID.95-98.)  The highlight of Kalmar's opinion, as noted by the ALJ, was that Scott could perform light work with a number of restrictions.  (ECF No. 3-2, PageID.34; ECF No. 3-3, PageID.96 (Dr. Kalmar's statement of Scott's exertional limitations).)  The ALJ found that Dr. Kalmar's evaluation was persuasive.  (*Id*.)  The ALJ further noted that Doctor G. Spinka, M.D., made identical findings on reconsideration on July 7, 2021.  (*Id*.)  The ALJ also commented on the supportability and consistency of these opinions.  (*Id*.)

The ALJ's decision notes that Dr. Patel reached significantly different conclusions regarding Scott's RFC.  Dr. Patel's opinion regarding Scott's RFC is captured in a one-page "Physical Capacity Evaluation" dated November 15, 2021.

The ALJ noted that Dr. Patel opined that Scott could sit five to ten minutes at a time for two hours in total and stand or walk five to ten minutes at a time for two hours total. (ECF No. 3-2, PageID.35.)  Dr. Patel found that Scott could place weight on her lower extremities 25 percent of the time, perform gross manipulation 20 percent of the time and fine manipulation 25 percent of the time, and that she should never bend, squat, crawl, or climb.  (*Id.*)  Dr. Patel found that Scott would miss work more than four days per month.  (*Id.*)

The ALJ found Dr. Patel's opinion not persuasive because it was unsupported. (*Id.*)  The ALJ noted that Dr. Patel merely checked off boxes on a form and provided no explanation to support what he had checked.  (*Id.*)   Furthermore, the ALJ found that Dr. Patel's opinion was based on Scott's subjective statements and unsupported by Dr. Patel's objective examination findings, which showed that Scott had a normal gait, motor strength of five out five in the bilateral lower extremities, negative straight leg raises, full wrist and elbow range of motion, and increased right grip strength without pain.  (*Id.*)

At step four, the ALJ determined that Scott could perform past relevant work as a collections clerk and customer service supervisor based upon her RFC.  (*Id.*, PageID.35-36.)   Accordingly, the ALJ concluded that Scott was not under a disability beginning January 27, 2020.  (*Id.*, PageID.36.)

### III.    Standard of Review

Review of an ALJ's decision is limited to two issues: (1) "whether the ALJ applied the correct legal standards," and (2) "whether the findings of the ALJ are

supported by substantial evidence." *Winslow v. Comm'r of Soc. Sec.*, 566 F. App'x 418, 420 (6th Cir. 2014) (quoting *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009)); 42 U.S.C. § 405(g).  The Court may not conduct a *de novo* review of the case, resolve evidentiary conflicts, or decide questions of credibility.  *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and the Commissioner's findings are conclusive provided they are supported by substantial evidence. 42 U.S.C. § 405(g).

Substantial evidence is defined as more than a mere scintilla of evidence but "such relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Jones v. Sec'y of Health & Human Servs.*, 945 F.2d 1365, 1369 (6th Cir. 1991).  In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole, and take into account whatever evidence in the record fairly detracts from its weight.  *Richardson v. Sec'y of Health & Human Servs.*, 735 F.2d 962, 963 (6th Cir. 1984) (citations omitted). The substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference.  *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted).  This standard affords the administrative decision maker considerable latitude and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision.  *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993).

## IV.    Analysis

## 1.  The ALJ's Assessment of Scott's Subjective Pain

Scott argues that the ALJ failed to properly assess her complaints of pain. Scott says that the objective medical evidence as well as Dr. Patel's opinions support her subjective description of her pain symptoms.  Second, Scott says that even after her carpal tunnel surgeries, she experienced right and left-hand weakness which caused her to drop objects.  Third, Scott complained that prolonged activities caused her lower back and lower extremity pain.  Scott argues that the ALJ erred by failing to comply with SSR-16-3p when evaluating her daily activities and the ALJ failed to fully consider her complaints of pain.  And finally, Scott argues that the ALJ failed to mention the efforts that she had taken to relieve her pain symptoms.

As a starting point, the ALJ spoke with Scott during her hearing.  (ECF No. 3-2, PageID.62-83.)  During her hearing with the ALJ, Scott testified that she stopped working in 2020 because she could no longer control the pain.  (*Id.*, PageID.69.)  Scott said that she had pain in her neck with limited range of motion that radiated to her shoulder.  (*Id.*)  She had pain in her right shoulder due to a tear.  (*Id.*, PageID.70.) Her lower back was in constant pain limiting bending, sitting, standing, and walking, with pain shooting to her toes.  (*Id.*)  After her hand surgeries, she experienced pain from her neck shooting across her shoulders to her arms into her hands.  (*Id.*)  Scott said that she did not have good range of motion with her hands and that her left elbow was worse after having surgery.  (*Id.*)  Scott stated that she had problems with her left thumb and was constantly dropping things.  (*Id.*, PageID.71.)

10

Scott also said that the medications that she was taking – Cyclobenzaprine, Flexeril, or Percocet – made her drowsy and cause concentration and memory problems.  (*Id.*)  She asserted that she sleeps a half an hour to an hour during the day, but on bad days she will not get out of bed.  (*Id.*, PageID.72.)

Scott stated that she could sit for possibly two hours per day but only ten minutes at a time due to the severe pain.  (*Id.*)  She further stated that she could stand for two hours per day and lift five pounds.  (*Id.*, PageID.73.)  She said she could not crouch, could stoop, was limited in reaching on the right and would have some issues on the left due to her left elbow.  (*Id.*, PageID.73-74.)  She stated that she has difficulty grasping with her right hand.  (*Id.*, PageID.75.)   In addition to medication, she relieves her pain each day using ice, heat, and a tens unit.  (*Id.*, PageID.77.)  Scott stated that she experienced pain in her hip, neck, back, shoulder, hands, left elbow, and shooting pain in her lower back down to her toes.  (*Id.*, PageID.78.)  Due to the pain, she stated she was unable to work.  (*Id.*)

The ALJ correctly stated the 2-step process he would use in evaluating Scott's symptoms, stating the following:

> In considering the claimant's symptoms, the undersigned must follow a two-step process in which it must first be determined whether there was an underlying medically determinable physical or mental impairment(s)--i.e., an impairment(s) that could be shown by medically acceptable clinical or laboratory diagnostic techniques--that could reasonably be expected to produce some of the claimant's pain or other symptoms.
>
> Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce some of the claimant's pain or other symptoms has been shown, the undersigned must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limited the claimant's work-related activities.  For this purpose, whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms were not substantiated by objective medical evidence, the undersigned must consider other evidence in the record to determine if the claimant's symptoms limited the ability to do work-related activities.

(*Id.*, PageID.31.)

The ALJ then devoted some three pages of his decision to chronicling Scott's back, shoulder, elbow and hand issues, the impact of her obesity, and her history of arthralgias of both hands.  (*Id.*, PageID.31-34.)

The ALJ stated the following regarding Scott's allegations of pain:

> The undersigned found the claimant's allegations were not fully consistent with the objective evidence.  The claimant has described daily activities which were not limited to the extent one would expect, given the complaints of disabling symptoms and limitations.  In April 2021, the claimant reported she was able to use her bilateral upper extremities for self-care activities and activities of daily living.  (Ex. 17F/34).  It appeared that, despite her impairments, the claimant has engaged in a somewhat normal level of daily activity.  The undersigned found the claimant's ability to participate in such activities was inconsistent with her allegations of functional limitations.

(*Id.*, PageID.34.)

The Sixth Circuit has long recognized that "pain alone, if the result of a medical impairment, may be severe enough to constitute disability.  *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984); *Greco v. Halter*, 46 F. App'x. 773, 775 (6th Cir. 2002).   The mere existence of an impairment, even a severe one, will not entitle a claimant to disability benefits unless the impairment prevents him or her from returning to past work or any other substantial gainful activity existing in the national economy that the claimant could do considering his or her RFC, age, education and work experience. 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1505. A claimant's subjective allegations of disabling symptoms are insufficient by themselves to support a claim for benefits, *Buxton v. Halter,* 246 F.3d 762, 773 (6th Cir. 2001), *Sizemore v. Sec'y of Health & Hum. Servs.,* 865 F.2d 709, 713 (6th Cir.1988), and the symptoms must be substantiated by some objective clinical or laboratory findings. *Hurst v. Sec'y of Health & Hum. Servs.,* 753 F.2d 517, 519 (6th Cir.1985); *see also* 20 C.F.R. §§

404.1529 and 416.929; Social Security Ruling (SSR) 96-7p.   As explained by the Sixth Circuit "[a] subjective allegation of disabling symptoms alone is insufficient; the claimant must substantiate the symptoms by objective clinical or lab findings." *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x. 496, 498 (6th Cir. 2006).

An ALJ's factual findings concerning a claimant's subjective symptoms are peculiarly within the province of the ALJ.  *Gooch v. Secretary of Health & Human Servs.*, 833 F.2d 589, 592 (6th Cir. 1987).  "It is for the administrative law judge, not the reviewing court, to judge the consistency of a claimant's statements." *Lipanye v. Comm'r of Soc. Sec.*, 802 F. App'x 165, 171 (6th Cir. 2020).  The Court's "review of a decision of the Commissioner of Social Security, made through an administrative law judge, is extremely circumscribed[.]" *Kuhn v. Comm'r of Soc. Sec.*, 124 F. App'x 943, 945 (6th Cir. 2005).

The SSA – and any ALJ who subsequently reviews the case – considers the following factors with respect to a claimant's symptoms:

- the claimant's daily activities;

- the location, duration, frequency, and intensity of pain or other symptoms;

- precipitating and aggravating factors;

- the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms;

- treatment, other than medication, received for relief of pain or other symptoms;

- any measures used to relieve pain or other symptoms (e.g., lying flat on back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and

- other factors concerning functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 404.1529(c)(3).

As noted above, the ALJ devoted about three pages of his decision to summarizing Scott's medical records as they pertained to her back, shoulders, elbow, and hand impairments, as well as her obesity. The ALJ's purpose was to evaluate her pain symptoms and to formulate the RFC.

Scott argues that the ALJ failed to properly consider seven objective medical findings from the medical records. The first three predate her January 27, 2020, disability onset date. Scott directs the Court to the following records:

- The April 2018 MRI results. (ECF No. 3-7, PageID.331-332). This MRI showed mild discogenic disease and small C4-C5 and C6-C7 annular disc bulges without canal stenosis or apparent neutral impingement. (*Id.*)

- The June 2019 upper extremity EMG and nerve conduction studies (NCS). (*Id.*, PageID.373.) The EMG was conducted because Scott complained of hand numbness and finger tingling and was referred to Dr. Olga Brusil, M.D. It was noted that she uses a power tool for sanding wood. The EMG showed mild mononeuropathy in the wrists, moderate right ulnar neuropathy in the elbow, moderate bilateral C5-6

14

radiculopathy, and no evidence of polyneuropathy.  (*Id.*)  Dr. Brusil recommended a trial of Diclofenac, a non-steroidal anti-inflammatory medication, and physical therapy.  (*Id.*)

- The September 2019 MRI of the cervical spine.  (*Id.*, PageID.343-344.) The MRI showed a 1.7 mm herniation of the C2-C3 disc, a 1.3 mm herniation of the C4-C5 disc, and a 1.3 mm herniation of the C5-C5 disc. There was mild foraminal narrowing, with no annular disc tears.  (*Id.*)

- The July 2020 lower extremity EMG.  (*Id.*, PageID.370.)  The EMG was conducted by Dr. Brusil because Scott complained of pain radiating down her right leg, buttock tingling, and right ankle pain.  Scott was taking Flexeril at night, Percocet, Ibuprofen, and Lidocaine patches. The EMG showed mild L5-S1 radiculopathy, with right sciatic neuropathy suggested, and no evidence of radiculopathy at other levels. (*Id.*)  Dr. Scott recommended pain management for sciatic nerve block, B12 replacement, Tizandine/Relafen, and Diclofenac gel.  (*Id.*)

- The December 2020 right carpal tunnel release procedure. (ECF No. 3-8, PageID.497-498.)

- The February 2021 left carpal tunnel release procedure.  (ECF No. 3-9, PageID.546-574.)

- The October 2021 left elbow MRI.  (ECF No. 3-11, PageID.679-680.)  The MRI showed a low-grade tear in the deep fibers of the common flexor tendon and non-specific posterior subcutaneous tissue edema.  (*Id.*)

The ALJ addressed each of Scott's impairments in his decision.  Contrary to Scott's argument, the ALJ discussed the MRI reports for April 2018 and September 2019, and found that the RFC for light work accounted for Scott's back and neck pain symptoms due to mild discogenic disease and cervical spine herniation.  (ECF No. 3-2, PageID.31.)  The ALJ found that the RFC for light work and occasional postural limitations accounted for findings in the June 2020 MRI and July 2020 NCS and EMG.  (*Id*., PageID.32.)

Further, the ALJ considered Dr. Patel's October 15, 2020, examination of Scott due to neck and back pain.  (ECF No. 3-2, PageID.32.)  Dr. Patel noted that Scott complained of pain duration over the last two months and the medication – (oxyCODONE-acetaminophen (Percocet), Flexeril, and lidocaine patches) – provided relief without uncontrolled side effects.  (ECF No. 3-7, PageID.468.)  Scott reported that she could perform daily living activities with the use of medication. (*Id*.)   Dr. Patel reported that Scott's lumbar spine and gait were normal, lumbar range of motion was full and painless, motor strength was five out of five in the lower extremities, and a negative straight leg test, although she reported pain radiating into her right foot upper and lower extremities.  (*Id*., PageID.470-471.)   Dr. Patel examined Scott on November 12, 2020, for complaints of neck and back pain with pain radiating into her right upper and lower extremities.  (*Id*., PageID.463.)  Dr. Patel noted that Scott's extremities showed no apparent significant peripheral edema, no apparent gross neurological deficits, no significant masses or thryoidmegaly in the neck.  (*Id*., PageID.465.)

The ALJ also considered Scott's examination records in 2021.  (ECF No. 3-2, PageID.32.)  Dr. Patel's physician's assistant, Gina Giron, PA, examined Scott for pain including neck pain on April 7, 2021.  (ECF No. 3-10, PageID.612-616.)  Dr. Patel examined Scott on June 2, 2021, for cervical spondylosis and lumbar pain.  (ECF No. 3-10, PageID.606-610.)  Scott was prescribed medications to manage her pain.  (*Id.*)  The ALJ considered the medical findings that were relatively normal and managed by medication (ECF No. 3-12, PageID.712-735) in determining that Scott had the RFC for light work, with occasional postural limitations and occasional overhead reaching.  (ECF No. 3-2, PageID.32.)

The ALJ considered Scott's right shoulder osteoarthritis, tendinosis, and pain with overhead reaching.  (*Id.*, PageID.33.)  Scott was examined by orthopedic surgeon Andrew P. Hartman, M.D., on April 5, 2021, for right shoulder pain.  (ECF No. 3-9, PageID.541-543.)  Scott indicated that her pain was aggravated by overhead lifting.  (*Id.*, PageID.541.)  The neurovascular exam was intact to bilateral upper extremities, range of motion was normal, motor strength was five out five, no bicep pain, and speed test was negative, but there was tenderness over the AC joint.  (*Id.*, PageID.542.)  Dr. Hartman gave Scott a cortisone injection and made a request for physical therapy.  (*Id.*)  The ALJ considered Scott's shoulder impairment in the RFC by limiting her to light work and occasional overhead lifting.

The ALJ considered Scott's left elbow impairment.  (ECF No. 3-2, PageID.33.)  Scott had left elbow ulnar nerve decompression surgery on February 11, 2021.  The right elbow MRI ordered by Dr. Hartman in October 2021, showed a low-grade tear

(ECF No. 3-11, PageID.679-680.)  Dr. Hartman examined Scott due to increased numbness and pain, and because she was dropping things out of her hand and losing control of the steering wheel while driving.  (*Id*., PageID.681.)  Dr. Hartman found nerve tenderness, but that Scott's left hand was normal with full flexion, extension, pronation, and supination.  (*Id*.)  He suspected that dropping objects could be associated with cubital tunnel syndrome (inflammation of the ulnar nerve).  (*Id*.)  Dr. Hartman injected lidocaine and indicated that if that did not help, he would attribute the dropping of objects to epicondylitis (tennis elbow).  (*Id*., PageID.681-682.)  The ALJ accounted for Scott's elbow impairment by limiting her to occasional overhead reaching and to frequent, as opposed to constant, handing and fingering.

The ALJ discussed Scott's December 2020 carpal tunnel release procedure and ulnar nerve decompression in her right hand, and her February 2021, carpel tunnel release procedure in her left hand.  (ECF No. 3-2, PageID.33-34.)  Scott was referred to physical therapy and on April 13, 2021, she showed full range of motion, with increased grip strength with pain four out of ten.  (ECF No. 3-9, PageID.574.)  The ALJ considered that Scott was able to use her hands without issue each day.  The ALJ found that Scott was able to use her upper extremities for self-care and light activities of daily living, but was restricted with heavier, lifting/carrying/pushing, and weight bearing.  (*Id*.)  Although Scott argues that the ALJ failed to give enough examples of how she performed self-care and light activities of daily living, the ALJ limited this analysis to only Scott's ability to use her hands.  It is not unreasonable for an ALJ to rely on activities of daily living in concluding that the claimant is not

as limited as claimed. *Knapp v. Comm'r of Soc. Sec.*, 2023 WL 6800153, *3 (6th Cir., October 16, 2023). The ALJ considered this assessment and found that Scott's limitations were consistent with light work and limitations of frequent handling and fingering.

Scott argues that the ALJ failed to address the efforts to treat her pain symptoms and the limiting side effects of her medications. But the record before the Court, as reflected above, demonstrates that the ALJ considered Scott's treatment and medical records in formulating the RFC. The ALJ discussed the treatment that she received for each of her conditions involving her back, neck, and lower and upper extremities, including her hands. (ECF No. 3-2, PageID.29-35.)

In the opinion of the undersigned, substantial evidence in the record shows that the ALJ addressed Scott's medical condition and the treatment of her condition in setting forth the RFC and limitations imposed. Furthermore, In the opinion of the undersigned, substantial evidence in the record indicates that the ALJ correctly addressed Scott's subjective complaints of pain.

## 2. The ALJ's RFC Assessment

Scott argues that the ALJ failed to make a proper RFC determination by not including neck limitations, concentration and memory difficulties, pain symptoms, medication side effects, the need for breaks, and absenteeism. The ALJ's RFC for Scott is shown below.

> After careful consideration of the entire record, the undersigned found that the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except she could never climb ropes, ladders, or scaffolds; could occasionally climb ramps/stairs,

balance, stoop, kneel, crouch, and crawl. She could occasionally reach overhead bilaterally. She could frequently handle and finger bilaterally. She should avoid concentrated exposure to temperature extremes, vibration, fumes, odors, dust, and gases, unprotected heights, and moving, dangerous machinery.

(*Id.*, PageID.30.)

The ALJ's RFC incorporated all of the exertional, postural, manipulative and environmental limitations initially found by Dr. Kalmar on November 30, 2020, and by Dr. Spinka on reconsideration on July 7, 2021. (ECF No. 3-3, PageID.96-98, 119-122.)

A claimant's RFC is the most, not the least, a claimant can do despite his or her impairments. 20 C.F.R. §§ 404.1545(a), 416.945(a)(1); *Branon v. Comm'r of Soc. Sec.*, 539 F. App'x 675, 677 n.3 (6th Cir. 2013); *Griffeth v. Comm'r of Soc. Sec.*, 217 F. App'x 425, 429 (6th Cir. 2007). RFC is an administrative finding of fact reserved for the Commissioner. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2); *Deaton v. Comm'r of Soc. Sec.*, 315 F. App'x 595, 598 (6th Cir. 2009). While the RFC determination is made by the ALJ, an ALJ's RFC determination must be supported by substantial evidence. *Torres v. Comm'r of Soc. Sec*, 490 F. App'x 748, 754 (6th Cir. 2012). If the record contains "conflicting evidence that would suggest further limitations, under the substantial evidence standard, administrative findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion." *Id.*

Ultimately, the ALJ may consider *all* relevant evidence on record, including an individual's medical history, reports of daily activity, and recorded observations. SSR

96-8p.  The "ALJ is charged with the responsibility of determining the RFC based on her evaluation of the medical and nonmedical evidence." *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 728 (6th Cir. 2013).

As set forth above, the ALJ addressed Scott's back and neck impairments and limited her to light work, with only occasional climbing of ramps/stairs, balancing, stooping, kneeling, crouching, and crawling.

The ALJ addressed Scott's diagnosis of radiculopathy (ECF No. 3-2, PageID.32) and further stated:

> The claimant was seen in October 2020 for neck and back pain. (Ex. 14F/6). On exam, cervical spine had no masses. She had no pain with range of motion. Cervical range of motion was normal. Spurling's test was negative. The claimant was tender to palpation over the cervical paraspinals. She complained of pain upon facet loading on the right. The claimant's lumbar spine showed normal alignment. Gait was normal. Lumbar range of motion was full and painless. Motor strength was five out of five in the bilateral lower extremities. Straight leg raising was negative. (Ex. 14F/8-9). The claimant was seen in November 2020 for neck and back pain. (Ex. 14F/1). She reported the pain was radiating into her right upper extremity and right lower extremity. On examination, her extremities showed no significant peripheral edema. Her neck had no significant masses or thyromegaly. (Ex. 14F/1-3). There were no gross neurological deficits. (Ex. 16F/13). There was no indication the claimant experienced limitations greater than the residual functional capacity above.
>
> The claimant was seen in April and June 2021 with cervical and lumbar spondylosis. (Ex. 18F/1, 9). She was being managed on medications. On exam, her neck was unremarkable. The extremities showed no significant peripheral edema. (Ex. 18F/1-2, 9). On examination in October 2021, the claimant had moderate decrease in lateral rotation of the neck. Motor exam showed minus five out of five bilateral hand strength. The claimant had moderate decrease in flexion and extension of the lumbar spine. She complained of pain with facet loading. However, her gait was normal. Strength was normal and was five out of five in the bilateral lower extremities. Straight leg raising was negative. (Ex. 23F/7). On examination in November 2021, the claimant had good

bilateral lower extremity sensation. She was able to dorsiflex the bilateral great toes. Inspection of the back showed no abnormality. Her gait was normal. Visual overview of all four extremities was normal. (Ex. 25F). On exam in December 2021, gait was again normal. (Ex. 26F). **This was consistent with the limitations in the above residual functional capacity for light work, occasional postural limitations, and occasional overhead reaching.**

(*Id.* (with emphasis added).)

In addition, as previously noted, the ALJ relied upon the opinions of state agency physicians Dr. Kalmar and Dr. Spinka, and concluded that those opinions were persuasive and supported by evidence in the record. (ECF No. 3-2, PageID.34.)

The ALJ considered the medical evidence and Scott's pain symptoms and made an RFC determination based upon the evidence in the record.  In the opinion of the undersigned, substantial evidence supports ALJ Schum's RFC determination.  Scott argues that the ALJ did not consider all the records that could support disability in her favor.  But it is well settled that "[t]he findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion." *Buxton*, 246 F.3d at 772.

### 3. The ALJ's Assessment of the Persuasiveness of Dr. Patel's Opinions

Scott argues that the ALJ erred by failing to assign the proper weight to Dr. Patel's medical opinion.  For claims filed after March 27, 2017, the Commissioner – and any ALJ who subsequently reviews the case – will not give specific evidentiary weight, including controlling weight to opinions, but will articulate the persuasiveness of a medical opinion. 20 C.F.R. § 404.1520c(a).  An ALJ uses five factors to articulate the persuasiveness of a medical opinion: (1) supportability of the

relevant objective evidence and supporting explanations, (2) consistency of the opinions with medical evidence or nonmedical evidence in the record, (3) relationship with the claimant, (4) specialization, and (5) other factors that tend to support or contradict the opinion.  20 C.F.R. § 404.1520c(a) and (c).

The most important factors an ALJ considers are the supportability and consistency of the medical opinions.  20 C.F.R. § 404.1520c(a).  The ALJ is required to articulate how he or she considered the medical opinions and prior administrative medical findings and explain the supportability and consistency factors in the decision. 20 C.F.R. § 404.1520c(b)(2).

With respect to Dr. Patel's opinions, The ALJ focuses on limitations stated in a check-box form document dated November 15, 2021, which is shown below.

## PHYSICAL CAPACITY EVALUATION

NAME OF CLAIMANT: _Karen Scott_    SSN: _560 - 35 - 0639_

Please answer the following questions concerning your patient's limitations.

| I. Claimant can SIT total at one time: | 0  5  (10)  15  20  30  45 | 1  2  More than 2 |
|---|---|---|
| | Minutes | Hours |
| Claimant can STAND/WALK total at one time: | 0  5  (10)  15  20  30  45 | 1  2  More than 2 |
| | Minutes | Hours |

**Total Cumulation during entire 8 hour work day (total does not have to equal 8 )**

| | 0 | < 1 | 1 | | 3 | 4 | 5 | 6 | 7 | 8 HOURS |
|---|---|---|---|---|---|---|---|---|---|---|
| SIT | 0 | < 1 | 1 | (2) | 3 | 4 | 5 | 6 | 7 | 8 HOURS |
| ON FEET (STAND/WALK) | 0 | < 1 | 1 | (2) | 3 | 4 | 5 | 6 | 7 | 8 HOURS |

| II. Based on an 8 hour workday | 0% | 1% TO 33% | 34% TO 66% | 67% TO 100% |
|---|---|---|---|---|
| Claimant can LIFT/CARRY | NEVER | OCCASIONALLY | FREQUENTLY | CONTINUOSLY |
| A. Up to 5 lbs. | [  ] | [X] | [  ] | [  ] |
| B. 6-10 lbs | [X] | [  ] | [  ] | [  ] |
| C. 11-20 lbs | [X] | [  ] | [  ] | [  ] |
| D. 21-25 lbs | [X] | [  ] | [  ] | [  ] |
| E. 26-50 lbs | [X] | [  ] | [  ] | [  ] |
| F. 51-100 lbs | [X] | [  ] | [  ] | [  ] |

**III. Claimant can use LOWER EXTREMITIES for the indicated % of the day for the following activities:**

| | SQUATTING, KNEELING, PIVOTING | | WEIGHT BEARING | | REPETITIVE MOVEMENT/FOOT CONTROLS | |
|---|---|---|---|---|---|---|
| A. RIGHT | 0 | % | 25 | % | 5-10 | % |
| B. LEFT | 0 | % | 25 | % | 5-10 | % |

**IV. Claimant can use UPPER EXTREMITIES for the indicated % of the day for the following activities:**

| | GROSS MANIPULATION | | FINE MANIPULATION | | REACHING ALL DIRECTIONS | |
|---|---|---|---|---|---|---|
| A. RIGHT | 10 | % | 25 | % | 5-10 | % |
| B. LEFT | 10 | % | 25 | % | 5-10 | % |

**V. Will your patient sometimes need to take unscheduled breaks during an 8-hr working day?** [X] Yes [  ] No

If Yes,  1) how often and for how long will this happen? _Q 30 min for 15 min_

2) on such breaks will your patient need to  [X] lie down or  [X] recline ?

| VI. Claimant is able to: | Never | Occasionally | Frequently | Continuously |
|---|---|---|---|---|
| A. Bend | [X] | [  ] | [  ] | [  ] |
| B. Squat | [X] | [  ] | [  ] | [  ] |
| C. Crawl | [X] | [  ] | [  ] | [  ] |
| D. Climb | [X] | [  ] | [  ] | [  ] |

**VII. Please estimate on average, how many days per month your patient is likely to be absent from work as a result of the impairments or treatment ?**

[  ] Never
[  ] About one day per month
[  ] About two days per month

[  ] About thee days per month
[  ] About four days per month
[X] More than four days per month

Date: _11/15/2021_    Signed: _Yogesh Patel_

Print/Type Name: _Yogesh V. Patel_

(ECF No. 3-13, PageID.748.)

The ALJ's conclusions, including his assessment of the persuasiveness of Patel's opinion, are shown below.

Yogesh Patel, M.D. opined the claimant could sit five to ten minutes at a time, two hours total; stand/walk five to ten minutes at a time, two

hours total. She could occasionally lift five pounds, never anything heavier. The claimant could use the bilateral lower extremities 25% of the time for weightbearing. She could perform gross manipulation 20% of the time, and fine manipulation 25%. She should never bend, squat, crawl, or climb. The claimant would miss more than four days of work per month. (Ex. 24F). This was not persuasive. The opinion was not supported. Dr. Patel merely checked off boxes on a form rather than provide an explanation for the limitations given. The opinion appears to be based on the claimant's subjective allegations, rather than an objective clinical assessment in the professional opinion of the provider. Dr. Patel conducted few in person exams leading up to this opinion. The opinion was also not consistent with objective evidence. On exams, gait was normal. Lumbar range of motion was full and painless. Motor strength was five out of five in the bilateral lower extremities. Straight leg raising was negative. (Ex. 14F/8-9; 23F/7). The claimant had full wrist/elbow range of motion. Her right grip strength was increased without pain. (Ex. 17F/34). Dr. Patel's limitations were inconsistent with the denials of the claimant of muscle weakness, arm pain, and numbness on June 26, 2020 (Ex. 27F/5) and on July 15, 2020 (Ex. 27F/3).

(ECF No. 3-2, PageID.35.)

In summary, the ALJ identified four reasons for concluding that Dr. Patel's opinions were not supported.  Those reasons are:

- Dr. Patel's use of a check-box form without explanation for the limitations,

- The ALJ's view that Dr. Patel's opinions appear to be based on the claimant's subjective allegations, rather than an objective clinical assessment,

- The ALJ's conclusion that Dr. Patel conducted few in-person evaluations, and,

- The ALJ's conclusion that Patel's opinions were inconsistent with the objective medical evidence.

The undersigned concludes that the ALJ complied with the requirements of 20 C.F.R. § 404.1520c in assessing the medical opinions in this case and that his decision regarding the persuasiveness of Dr. Patel's opinion is supported by substantial evidence.

The ALJ's criticism of Dr. Patel's use of a check-box form is valid.  An ALJ is not bound by conclusory statements of doctors, particularly where they appear on "check-box forms" without explanations citing detailed objective criteria and documentation.  *Buxton*, 246 F.3d at 773; *Hernandez v. Comm'r of Soc. Sec.*, 644 F. App'x 465, 474-475 (6th Cir. 2016).  "Form reports in which a doctor's obligation is only to check a box, without explanations of the doctor's medical conclusions are weak evidence at best." *Smith v.  Comm'r of Soc. Sec.*, No. 13-cv-12759, 2015 WL 899207, at * 14 (E.D. Mich. Mar. 3, 2015); *see also Ashley v. Comm'r of Soc. Sec.*, No. 1:12-cv-1287, 2014 WL 1052357, at * 8 n.6 (W.D. Mich. Mar. 19, 2014) ("Courts have increasingly questioned the evidentiary value of 'multiple choice' or 'check-off' opinion forms by treating physicians[.]").  The ALJ correctly noted that the check-box form used by Dr. Patel was not supported by any explanation.  The form is dated November 15, 2021, but the records from Dr. Patel's office during that time fail to indicate any testing that might have established these limitations.

In addition, the ALJ found that Dr. Patel's opinions were unpersuasive because Dr. Patel's conclusions were inconsistent with the objective medical evidence.  The ALJ specifically cited to these portions of the medical records:

- Ex. 14F/8-9, which is included in this record at ECF No. 3-7, PageID.470,

- Ex. 23F/7 (ECF No. 3-11, PageID.706),

- Ex. 17F/34 (ECF No. 3-9, PageID.574),

- Ex. 27F/5 (ECF No. 3-13, PageID.759) and

- Ex. 27F/3 (ECF No. 3-13, PageID.757).

The undersigned has reviewed each of these records and notes that the ALJ's statements regarding the conclusions stated in these records are correct. The undersigned recognizes that Scott's medical records include other information that might lead to another conclusion. But, on appeal, this Court does not re-weigh that evidence. Instead, it is the Court's duty to determine whether the ALJ's opinion is supported by substantial evidence. Here, it is.

It should also be noted that that the ALJ found two other medical opinions – the opinions of Dr. Kalmar and Dr. Spinka – to be persuasive. (ECF No. 3-2, PageID.34.) These doctors provided assessments for the state agency. The ALJ noted that although these doctors did not examine Scott, they did review the written records. The ALJ found that "[t]heir findings were supported and consistent with objective evidence, as well as consistent with each other." (*Id.*) The ALJ cited the same records listed in his review of Dr. Patel's opinions. (*Id.*)

The opinions of Dr. Kalmar and Dr. Spinka are set forth in Ex. 2A (ECF No. 3-3, PageID.86-101) and Ex. 4A (ECF No. 3-3, PageID.103-125), respectively. These doctors reviewed Scott's records and history, and both reached conclusions regarding Scott's RFC. Dr. Kalmar's initial determination, dated December 11, 2020, established Scott's exertional, postural, manipulative and environmental limitations

(*id.*, PageID.95-98) and concluded that she was not disabled (*id.*, PageID.100).  Dr. Spinka's assessment on reconsideration, dated July 7, 2021, reviewed a number of medical records, including records from Dr. Patel, and concluded that Scott was still limited to light work.  (*Id.*, PageID.117.)

The undersigned concludes that the opinions of Dr. Kalmar and Dr. Spinka are consistent with the ALJ's RFC determination.  Furthermore, these opinions support the ALJ's assessment regarding the persuasiveness of Dr. Patel's opinion.

Scott points to Dr. Patel's supplemental letter to the Appeals Council as objective evidence that supports her disability.  (ECF No. 3-2, PageID.43-44.)  This letter is dated April 11, 2022.  Thus, it was submitted more than two months after the ALJ's decision.  In this letter, Dr. Patel seeks to provide additional information about the physical capacity evaluation he provided on November 15, 2021.

In determining whether an ALJ's decision is supported by substantial evidence, the Sixth Circuit has "repeatedly refused to consider evidence submitted after the ALJ issued his decision."  *Culer v. Comm'r of Soc. Sec.*, 561 F. App'x 464, 472 (6th Cir. 2014).  This includes evidence that is submitted for the first time to the Appeals Council.  *Id.*  In the letter, Dr. Patel first notes that Scott has subjective complaints of pain in her neck, upper extremities, left elbow, left thumb, low back pain, right hip pain with ambulation, left foot pain with ambulation, and pain in her lower extremities.  (*Id.*, PageID.43.)  Dr. Patel states that his physical capacity examination was based upon subjective and objective information.  But other than admitting that the ALJ was correct in his assessment of his opinion to the extent that

it was at least in part based upon Scott's subjective complaints of pain, nothing within the letter shows that the Commissioner should have reached a different result. (*Id.*, PageID.43-44.)  Remand under sentence six of 42 U.S.C. § 405(g) is appropriate only if the evidence is new and material and good cause is shown for the failure to present the evidence to the ALJ. *Ferguson v. Comm'r of Soc. Sec.*, 628 F.3d 269, 276 (6th Cir. 2010).  "[E]vidence is new if it was 'not in existence or available to the claimant at the time of the administrative proceeding" and it "is 'material' only if there is 'a reasonable probability that the Secretary would have reached a different disposition of the disability claim if presented with the new evidence." *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001).  In the opinion of the undersigned, Dr. Patel's letter to the Appeals Council does not meet this standard.

The undersigned concludes that the ALJ's assessment of Dr. Patel's opinion is supported by substantial evidence.

### V.  Recommendation

The Court is sympathetic toward Scott and understands that she does have a number of severe impairments.   The record, however, indicates that the ALJ conducted an appropriate review of the Social Security Administration's denial of Scott's disability claims.  It is respectfully recommended that the Court affirm the decision of the Commissioner because the ALJ relied upon substantial evidence in the record to find that Scott is not disabled as defined by the Social Security Administration.

NOTICE TO PARTIES:  Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b).  Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985).


/s/ *Maarten Vermaat*
Maarten Vermaat
U.S. Magistrate Judge

Dated:  December 21, 2023